### STATE v. GEORGE THOMPSON.

(Filed 8 December, 1926.)

**1. Criminal Law—Evidence—Barn Burning—Bloodhounds—Tracks.**

Where the reliability of bloodhounds has been testified to in following human beings by the scent, by one who has had experience with them: *Held,* on the trial of defendant for burning a barn, C. S., 4242, the tracing by the bloodhounds some two hours later of a track leading from the rear of the barn to defendant's residence, together with the identification of the track as that of defendant by one of his shoes, with evidence of motive, is sufficient evidence of guilt to take the case to the jury.

**2. Evidence—Questions and Answers — Appeal and Error — Harmless Error.**

> An inaccurate question asked a witness will not disturb the verdict finding the defendant guilty of a criminal offense, when it is cured by the answer of the witness thereto.

APPEAL by defendant from *Bryson, J.,* at April Term, 1926, of RANDOLPH.

The defendant was indicted for burning a barn in the possession of J. W. Kinley in breach of C. S., 4242, and from the judgment pronounced upon a verdict of guilty he appealed, assigning error.

*Attorney-General Brummitt and Assistant Attorney-General Nash for the State.*
*Moser & Burns for defendant.*

ADAMS, J. The defendant's principal exception relates to a denial of his motion to dismiss the action as in case of nonsuit. C. S., 4643. The motion in effect is a demurrer to the evidence and presents the question whether the testimony of the witnesses and the inferences reasonably to be drawn therefrom are sufficient in law to sustain the verdict and the judgment.

Considered most favorably for the State the testimony tends to prove the circumstances following. The barn was burned about ten o'clock on Sunday night, 19 July, 1925, the fire having started in an overhead driveway. A little after midnight bloodhounds were brought from Asheboro by W. C. York, who testified: "I am a traveling salesman. I own, keep and possess bloodhounds. I have still and did have at that time these animals in my possession. I did not own them on 19 July, 1925, but I worked them. I have had them about five or six years. The dogs are English, the female is English and American mixed. I have used them four or five years and the records show they have been used longer. The dogs are trained dogs for the purpose of tracking human beings. They are reliable in that particular."

He carried the dogs behind the barn where no person had been since the discovery of the fire; there "they struck a track and opened up." A short distance from the barn one of the witnesses saw a track by the light of a lantern and followed it to a pathway in the woods, then into a road that leads to Hunt's, and afterwards into another leading to the defendant's house. The tracks found in the path and in the roads pointing to and from the barn were the same as the track from which the dogs began the trail. From the barn the dogs went across some plowed ground into the woods, across a branch, into some roads, and then on to the defendant's porch. There they stopped. Questioned

45—192

in reference to his shoes the defendant said that he had a pair of bro-gans and afterwards admitted that he owned another pair, one of which he produced. This shoe was a 7 or 7½, with a narrow toe and a rubber heel, and at the barn and several other places was fitted into the tracks just referred to. The rubber heel was worn and corresponded with the worn appearance of the heel in the tracks. The sheriff testi-fied that about thirty yards back of the barn there was a plain, fresh track that the left shoe fitted.

Though the prosecuting witness had refused to sign a bond for the release of the defendant's son, who was then in custody, and though on the Friday next preceding the night of the fire the defendant told Dora Hughes that people were going to be sorry for treating him as they had treated him, the evidence of motive is slight; but on the fol-lowing Tuesday the defendant suggested to Jesse Harrelson and his wife that "he would come clear" if they would testify that they left his house at a certain time.

If the testimony in regard to the action of the dogs be laid aside there is still more than the proverbial "scintilla" of evidence to be considered on behalf of the State; and when this evidence is corrobo-rated by the trailing of the dogs two hours after the fire occurred its probative force is such as to justify its submission to the jury.

The exceptions to the evidence are overruled. If the question to which the first relates was inaccurately phrased the error is cured by the answer; and as to the second, York's statement that he had to find the track back of the barn was intended to indicate the place where it was presumed the tracks would probably be found.

We find

No error.